In the Matter of the Estate of JOHN L. KEENAN, Deceased. FLORENCE R. KEENAN, as Executrix of JOHN L. KEENAN, Deceased, Appellant; STATE TAX COMMISSION, Respondent.

Argued April 10, 1951; decided May 24, 1951.

*Francis A. O'Brien* and *John L. Keenan, Jr.,* for appellant. I. The widow's life estate is in legal effect not defeasible and as a matter of law qualifies for the statutory exemption. (*Sherman* v. *Richmond Hose Co.,* 230 N. Y. 462; *Hogan* v. *Curtin,* 88 N. Y. 162; *Matter of Arrowsmith,* 162 App. Div. 623, 213 N. Y. 704.) II. If the widow's life estate be deemed effectively defeasible, the taxing authority below erred as a matter of law in failing to

use or permit the use of pertinent actuarial tables and data on the probability of remarriage. III. The omission to use actuarial data and proof is contrary to the policy of this State to conform, where possible, with Federal tax rule and interpretation. (*Matter of Weiden,* 263 N. Y. 107; *Matter of Rogers,* 296 N. Y. 676; *Ithaca Trust Co.* v. *United States,* 279 U. S. 151; *Matter of Cregan,* 275 N. Y. 337; *Commissioner of Internal Revenue* v. *Maresi,* 156 F. 2d 929; *Du Charme's Estate* v. *Commissioner of Internal Revenue,* 164 F. 2d 959.) IV. The determination below ignores both the purpose and technical tests of the exemption statute. V. The legacy of $5,000 to decedent's brother should be held exempt. (*Matter of Ackerina,* 195 Misc. 383.)

*Mortimer M. Kassell* and *Francis Kelliher* for respondent. I. The wife's right to income from the residuary trust will terminate upon her remarriage. (*Matter of Daggett,* 130 Misc. 635.) II. The estate transferred to the widow, terminable on remarriage, is not exempt under section 249-q of the Tax Law. (*People* v. *Brooklyn Garden Apts.,* 283 N. Y. 373; *Matter of Kinney,* 257 App. Div. 496, 281 N. Y. 840; *County of Herkimer* v. *Village of Herkimer,* 251 App. Div. 126, 279 N. Y. 560; *Matter of Kennedy,* 240 App. Div. 20, 264 N. Y. 691; *Matter of Smith,* 246 App. Div. 99; *Matter of Lande,* 241 App. Div. 138; *Matter of Chollet,* 148 Misc. 782; *Matter of Cregan,* 275 N. Y. 337; *Humes* v. *United States,* 276 U. S. 487; *Matter of Adams* v. *New York, O. & W. Ry. Co.,* 220 N. Y. 579; *Matter of Townsend,* 215 N. Y. 442; *Matter of Campanari,* 188 Misc. 666; *Matter of Van Cott,* 194 Misc. 984.) III. The legacy of $5,000 paid to the children of decedent's predeceased brother is not exempt under section 249-q of the Tax Law. (*Tuttle* v. *Tuttle,* 2 Dem. 48; *Matter of Fagin,* 155 Misc. 533.)

FULD, J. John L. Keenan died in 1942, and by will provided a $5,000 bequest for his brother James — who had predeceased him, leaving three children — gave certain property outright to his wife Florence, then fifty-five years old, and directed that one half of the income of a trust of the residue be paid to his wife " as long as she is unmarried and my widow ". The " remainder " of the income was to be paid to his children and the principal was to be divided, upon his wife's death, among such children and the issue of any child who might have predeceased him.

In the estate tax return, filed by the wife as executrix, the property which passed to the wife outright was valued at $11,619, and her right to receive the trust income was valued as an interest to continue for her life — on the assumption that she would not remarry — at $64,319.78. No computation was made of the value of such interest taking into account the possibility of her remarriage. Claim was made for an exemption of $20,000 with respect to property transferred to the wife and for an exemption of $5,000 on account of the bequest to the brother.

The Surrogate's Court of Monroe County, refusing to allow any exemption with respect to the wife's right to income, fixed the exemption at $11,619, the value of the property which passed to her outright. It was the surrogate's view that the value of the widow's life estate defeasible by remarriage was impossible of computation by any formula recognized by law. He also denied the exemption sought for the bequest to the brother. The Appellate Division — one justice dissenting — affirmed the surrogate's determination. We reach a different conclusion as to the disallowance of an exemption vis-à-vis the wife's right to receive income until her remarriage. Such a defeasible life interest is susceptible of valuation by reference to recognized remarriage tables, and, since that is so, the surrogate should have made a determination of its value.

It is section 249-q of the Tax Law that prescribes the exemptions to be allowed in computing the amount of the net estate subject to tax. That section, as it read in 1942 when the testator died, allowed exemptions of " [a.] The amount of the net estate not exceeding twenty-thousand dollars transferred to a husband or wife; [b.] The amount of the net estate, not exceeding five thousand dollars in each instance, transferred * * * to a brother or sister ". As is evident from a reading of the provision, the grant of an exemption is not limited to transfers of particular estates or interests. The exemption is allowable whether the estate be present or future, vested or contingent, indefeasible or subject to defeasance, provided only that its " ' value ' can be determined with reasonable certainty upon the basis of known data " — as this court declared in 1937 in *Matter of Cregan* (275 N. Y. 337, 346).

A gift to a spouse of an outright life estate or of a right to income for life is, of course, a transfer for which an exemption

must be granted, and the absence of any language in the statute — until amended in 1946, four years after the testator's death (L. 1946, ch. 380; see N. Y. Legis. Ann., 1946, pp. 303–304) — limiting the exemption to a transfer of an interest '' indefeasibly vested '', establishes that a bequest to a wife of a right to income for life defeasible upon remarriage is not to be denied exemption or excluded from the application of the rule announced in the *Cregan* case *(supra,* 275 N. Y. 337), simply because it may terminate upon the happening of a contingency. Thus, the inquiry is narrowed to whether a life interest or a right to income for life, terminable by remarriage, is susceptible of valuation.

No one would today suggest that an unqualified life estate cannot properly be valued upon the basis of recognized mortality tables, even though the life span of any particular individual is most uncertain; while nothing — it was long ago said — may be '' more certaine than to dye * * * nothing [is] more uncertaine than the houre of death.'' The average experience reflected in mortality tables has long been accepted as an adequate basis for valuing life interests despite the factual uncertainties that necessarily exist in each individual case. True, another factor of uncertainty is added when the life estate is to terminate upon remarriage. But we do not regard that as a sufficient reason for drawing a line, sanctioning the use of mortality tables and rejecting the use of remarriage tables — particularly when there are such remarriage tables, long in use, that have been approved by legislature and court as an appropriate basis of valuation. As Judge LEARNED HAND said in *Commissioner of Internal Revenue* v. *Maresi* (156 F. 2d 929, 931): '' We are dealing with speculation as to the future on a subject which at best admits of no accurate determination. That is quite as true of longevity itself as of continued celibacy; the only difference is that as to the second there is one added factor of uncertainty. *The one sure way to do injustice in such cases is to allow nothing whatever upon the excuse that we cannot tell how much to allow.*'' (Emphasis supplied.)

The use of accredited remarriage tables was upheld for estate tax purposes by the United States Court of Appeals for

the Second Circuit in the *Maresi* case (*supra,* 156 F. 2d 929) (see, also, *Du Charme's Estate* v. *Commissioner of Internal Revenue,* 164 F. 2d 959, 963); the use of the remarriage tables of the Dutch Royal Insurance Institution has been sanctioned as the basis for computing the value of commuted payments to widows under sections 25 and 27 of the Workmen's Compensation Law since 1917; and — following a report in 1947 on the subject by the Law Revision Commission (N. Y. Legis. Doc. [1947] No. 65, pp. 301 *et seq.*) — the legislature of this state enacted section 1334 of the Civil Practice Act, authorizing the use of " the Casualty Actuarial Society's Table on Remarriage or other tables accepted by actuarial practice " in determining the value of an interest in real property defeasible on remarriage " if justice requires " that the possibility of defeasance be taken into account (L. 1947, ch. 848).

The duty of the surrogate to determine the value of the wife's right to income is imposed by section 249-v of the Tax Law, which reads as follows: " The value of every future or limited estate, income, interest or annuity for any life or lives in being, or in any way dependent upon any life or lives in being, whether vested or contingent, shall be determined by the rule, method and standard of mortality and value employed by the superintendent of insurance in ascertaining the value of annuities for the determination of liabilities of life insurance companies and according to the actuaries' or combined experience table of mortality, as extended   *   *   *   and the superintendent of insurance shall, on the application of the surrogate or appraiser, make such determination and certify the same to the surrogate or appraiser, and his certificate shall be conclusive evidence that the method of computation adopted therein is correct." The words, " every future or limited estate   *   *   *   in any way dependent upon any life or lives in being, whether vested or contingent," are unquestionably broad enough to include a life estate limited by, or defeasible upon, remarriage. Certainly, the section contains not a word or suggestion that prevents or precludes a surrogate from employing recognized remarriage tables in making the requisite computation.

The duty properly to assess the tax rested upon the surrogate and, consequently, the estate neither lost its

right to a proper decision as to value nor forfeited its power to question the correctness of the determination that was made, by failing to offer in evidence available remarriage tables. If the surrogate chose to make the essential value determination himself, it devolved upon him to employ all permissible data, whether proffered or not; if he chose not to make the computation himself, it was incumbent upon him to apply to the superintendent of insurance for a determination of value pursuant to section 249-v.

But a word need be said about the exemption claimed on account of the bequest to the brother. Since he had predeceased the testator, the gift of $5,000, that would otherwise have gone to him, passed, under section 29 of the Decedent Estate Law, to his three children who survived the testator. The exemptions provided for in section 249-q are based solely upon the actual relationship between the beneficiaries and the decedent. While a brother is included within the classes enumerated in the statute, the issue or descendants of a brother are not. That James' three children became entitled, by virtue of section 29, to his legacy does not mean that it vested in their father or in his estate. The provisions contained in that section to the effect that the legacy " shall not lapse " and that the descendants of the legatee shall take " as if such legatee or devisee had survived the testator and had died intestate " were not intended to accomplish a vesting of the property in the estate of the deceased legatee. Such language was employed merely to describe with clarity the class of persons to whom the property would pass directly from the testator. In short, then, the children took from the testator, and not through or from the estate of their father. (See *Tuttle* v. *Tuttle,* 2 Dem. 48, 53; *Matter of Fagin,* 155 Misc. 533, 534-535.) Quite clearly, the $5,000 legacy was not " transferred " to a brother; the courts below properly refused to allow that exemption.

The order of the Appellate Division and the decree of the Surrogate's Court should be modified by reversing so much thereof as disallows the widow's exemption with respect to her right to income for life defeasible by remarriage, and, except as so modified, affirmed, without costs, and the matter should

be remitted to the Surrogate's Court for further proceedings not inconsistent with this opinion.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FROESSEL, JJ., concur.

Ordered accordingly.